UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAIN CARROLL,

                    Petitioner,

                                        Case Number 18-12380
v.                                      Honorable David M. Lawson

SHANE JACKSON,

                    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner Dwain Carroll was convicted by a Michigan jury of several crimes involving his sexual abuse of his then-girlfriend's two minor daughters. He was given concurrent prison sentences totaling 25 to 40 years. In a petition for a writ of habeas corpus filed through counsel under 28 U.S.C. § 2254, he alleges that his convictions are flawed for several reasons, many of which relate to the way that the abuse came to light and was investigated and the way his trial was conducted. All of Carroll's claims were presented to the state courts either on direct appeal or in a post-conviction motion, and all were rejected. The state courts' decisions did not contravene or unreasonably apply federal law. Therefore, the petition will be denied.

I.

Carroll had been living with Amy Gaynier at her house in Monroe County, Michigan for about six years in 2010. Gaynier's two young daughters stayed with them much of the time. The girls are identified in the record as M.M., who was eight years old in 2010, and J.P., who was seven. The girls also spent time with their father and his fiancée, Robbie Probst and Sheri Woodruff.

Carroll had moved out of the house earlier that summer.  In September 2010, one of the girls told Probst that Carroll had touched her and her sister inappropriately.  Upset and angry, Probst called Gaynier and told her what the girls had said.  He did not call the police.

When eventually Gaynier brought the girls home she tried delicately to broach the subject with them, but they were upset and did not want to talk.  A few days later, she contacted the police, called therapists, and took the girls to the Child Advocacy Center for interviews.

The two girls were interviewed by several people, including a number of relatives, Probst's fiancée, and a pediatric sexual abuse nurse, all of whom — with the exception of Probst — testified at trial.  One of the last interviewers was David Lamontaine, a detective with the Monroe County Sheriff's Department.  He spoke with M.M. on September 16, 2010, found her to be reserved, and allowed her to draw pictures in response to his questions.  Later that day, he interviewed J.P, whom he described as fiery, talkative, and unable to sit still so that he could not follow child interview protocols.  Lamontaine took notes during the interviews, but he destroyed them the next day after he prepared a written report.  He did not record the interviews by either video or audio means.

Carroll eventually was charged with several counts of criminal sexual conduct, accosting a child for immoral purposes, and aggravated indecent exposure and, after a preliminary hearing, faced 19 counts at the time of trial.  He defended the case by challenging the credibility of the two girls, contending that their many relatives had influenced their testimony, and noting that there was no corroborating medical evidence.  The only physical evidence was a sex toy that had contained J.P.'s DNA; it was alleged that Carroll had inserted that into her vagina.

At the 2011 trial, M.M. testified that she was nine years old and in the fourth grade, and that she had lived in Temperance, Michigan with Carroll, her mother, J.P., and her brother when the incidents occurred. Describing her private parts as "your butt, your boobs" and "the front one" where "you go pee," M.M. said that Carroll had put his mouth on her boob when she was laying on her bed more than once. She also testified that Carroll put his front private in her back private when she was in her mom's bedroom. She explained that she was laying on her stomach and he was on his knees, and "he stuck his front private in my back private I think he tried to stick it in. It didn't really go in, but I think he like tried to keep putting it in." She said that one time when he tried to do it "this weird, warm liquidy stuff" was on her back private. M.M. also testified that Carroll put his tongue or mouth on her front private and back private and that he sometimes stuck his front private in her front private, although she also indicated that "it didn't really go in." M.M. also testified that Carroll stuck a "toy" of her mom's "up [her] private and if he pressed a button, it would vibrate" and identified an exhibit as that item. M.M. also testified that Carroll tried sticking his finger in her front private while in her mom's bedroom.

M.M. testified that Carroll was like a dad to her, except when he did bad things to her, and that she loved him. She said that the incidents happened when her mom was not home, and she told her mom about them after she told Probst.

J.P. testified that she was eight years old and in the third grade, and she lived in Temperance with Carroll, her mother, and her siblings for a period of time. She recalled an incident when she was in the garage and wearing a dress and Carroll took her panties off and licked her front and back privates. She identified pictures that she drew of the incident and said it made her

-3-

uncomfortable.  She testified that such acts also occurred in her bedroom and identified additional drawings.  J.P. testified that Carroll told her to lick his private and to rub his private when they were in his room and she complied.  She again identified corresponding drawings.  J.P. also testified that Carroll pushed his private into her mouth and that he touched her front private with his private and moved back and forth.  J.P. recalled another incident in which Carroll told her to come into the bathroom while he was rubbing his private and "clear stuff" came out.  She identified a picture that she drew of the incident.  J.P. further testified that Carroll touched her front and back privates with his hand and that it hurt when he touched her front private with his finger.

During cross-examination, J.P. acknowledged that she had been looking at her Aunt Sue during her direct testimony but denied trying to get answers from her.   She also said that she had talked to her about the incidents multiple times, and also with other relatives.

Carroll did not testify on his own behalf, but he called a child psychologist, who criticized Detective Lamontaine's interview techniques and identified several instances where the girls' accounts could have been tainted by family members and others who discussed the incidents with them.

Before the case went to the jury, the trial judge pared down the criminal information so that Carroll was facing 12 charges.  The jury convicted him of two counts of first-degree criminal sexual conduct, two counts of second-degree criminal sexual conduct, accosting a child for immoral purposes, and aggravated indecent exposure.   On direct appeal, he raised issues in three appellate briefs: one filed by his first appellate attorney, who withdrew from the case after filing his brief; one filed by a second appellate lawyer; and a third brief that Carroll filed *pro se*.  His

-4-

convictions were affirmed on appeal.  *People v. Carroll*, No. 308229, 2013 WL 6124227 (Mich. Ct. App. Nov. 21, 2013), *lv. den.* 497 Mich. 866, 853 N.W.2d 95 (2014).

Carroll filed a post-conviction motion for relief from judgment, which the trial court denied.  *People v. Carroll*, No. 11-38798-FC (Monroe Co. Cir. Ct. May 17, 2016).  The Michigan appellate courts denied leave to appeal.  *People v. Carroll*, No. 335657 (Mich. Ct. App. Jan. 6, 2017); 502 Mich. 936, 915 N.W.2d 358 (2018).

Carroll then timely filed through counsel his federal habeas petition.  He raises the following claims:

I.    The petitioner was denied his due process rights to a fair trial when the Monroe County Sheriff failed to electronically record and/or keep copies of notes from the forensic interview with the complaining witnesses, thereby denying him potentially exculpatory evidence which could prove his innocence

II.   The petitioner was denied his due process right to a fair trial by both the prosecutor's inclusion of prior bad acts evidence without motioning the court and by the court's failure to take action to limit the inclusion of said information.

III.  Repeated mistakes and/or a lack of action on the part of defense counsel denied the petitioner his due process rights to effective assistance of counsel and the right to a fair trial.

IV.   The evidence presented by the prosecutor was insufficient to establish beyond a reasonable doubt that the petitioner was guilty of the crimes for which he was charged and convicted.

V.    The petitioner was deprived of his state and federal constitutional due process right to a fair trial when the prosecutor during closing argument improperly shifted the burden of proof and indirectly commented on his silence, and where the prosecutor misstated the evidence.

VI.     The petitioner's Sixth Amendment right to effective assistance of counsel was violated by trial counsel's failure to object to the above instances of prosecutorial misconduct.

VII.    The witness tampering which occurred constitutes a due process violation and a structural defect and warrants an evidentiary hearing and a new trial.

VIII.   The threat to the juror denied the petitioner a fair trial in violation of the due process clause of the Fourteenth Amendment.

IX.     The Michigan Court of Appeals decision regarding failure to record the interviews of complainants was based on an erroneous factual finding and disregards the evolving law on this issue/the law on this issue highlights the ineffectiveness of counsel in failing to object to admission and failing to request a hearing on the admission of the testimony.

   A.    Where the charges against the petitioner arose during a split up of him and the complaints' mother and the initial interview of the children which led to the allegations against him was not videotaped or recorded, the complainants should have been disqualified as witnesses absent a finding that their allegations did not rise from suggestive questioning by police or relatives which occurred during the six-week period between initial disclosure and the report to police.

   B.    The failure of the father to testify impacted on the reliability of the testimony of the two child witnesses.

   C.    The law enforcement witness lied at trial about why the interview was not recorded.

   D.    Defense counsel was ineffective.

X.      Trial counsel was ineffective throughout the trial.

   A.    Defense counsel failed to move to exclude the testimony of complainants or seek an evidentiary hearing on suggestibility and did not object to the prosecutor's failure to record the law enforcement interview of complainants.

   B.    Trial counsel abdicated his responsibility to obtain a critical witness for trial.

-6-

      C.      Trial counsel stipulated to let Count 13 go to trial when there was no evidence to support the charge, nor did counsel object or move for a new trial.

      D.      Trial counsel was ineffective for not objecting to the coaching of a witness and for not moving for a mistrial.

      E.      The prosecutor committed misconduct and trial counsel was ineffective for not objecting to it.

      F.      Trial counsel failed to object to the prosecutor's leading questions, failed to call a trauma expert to counter the prosecution's expert, and failed to object to a drawing by one of the victims.

XI.      The petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel.

XII.      The cumulative effect of the above mentioned errors result in the denial of the petitioner's due process right to a fair trial.

XIII.      The lower court should have granted an evidentiary hearing on the issues raised herein.

Pet. at i-iii, ECF No. 1, PageID.11-13.  The warden filed an answer to the petition raising the defense of procedural default as to some of the claims.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The Court finds it unnecessary to address the procedural question.  It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix*

*v. Singletary*, 520 U.S. 518, 525 (1997)).  The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review.  Mere error by the state court will not justify issuance of the

-8-

writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).  The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

A.

Carroll's first cluster of issues addresses the admission of the girls' testimony at trial.  He asserts a due process violation caused by Detective Lamontaine's failure to preserve evidence of his interview of the girls by either recording the interviews, preserving his rough notes, or both. He also contends that the Michigan Court of Appeals perpetuated that violation when it misstated the basic facts about the whom the girls talked to before being interviewed by the police and failing to order a hearing to determine the reliability of their testimony.

The first part of the argument invokes *Brady v. Maryland*, 373 U.S. 83 (1963), where the Supreme Court held that a prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87.  Carroll contends that the materials he did not receive would have been valuable to him and used to attack the girls' credibility.  Those would fall within *Brady*'s ambit as impeachment evidence.  *Wearry v. Cain*, --- U.S. ---, 136 S. Ct. 1002, 1006 (2016) ("[T]he rule stated in *Brady* applies to evidence undermining witness credibility.") (citing *Giglio v. United States*, 405 U.S. 150, 153-54 (1972)).

Carroll raised this claim on direct appeal, and the Michigan Court of Appeals denied relief. Citing *Brady* and *Arizona v. Youngblood*, the court found that although Detective Lamontaine

-9-

destroyed his interview notes after he prepared his report, nothing in the record "supports a conclusion that anything in Lamontaine's notes was favorable to" Carroll; there was no proof that "Lamontaine destroyed his notes in bad faith or that he chose to not record the interviews in bad faith"; and even if the notes were preserved or the interviews were recorded, "there is no evidence that the outcome would have been different." *Carroll*, 2013 WL 6124227, at *2. That reasoning and result are consistent with federal law.

There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

No one can say with any degree of certainty beyond speculation that Lamontaine's rough notes or a recording of interviews would have been helpful to Carroll at trial. Those items would have no value as impeachment material, for instance, if there were no inconsistences between the interview statements and the trial testimony. The most that can be said is that they *might* have been helpful to the defense. *Brady*'s strict requirements are relaxed when the evidence only "might have exonerated the defendant." *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). "[U]nless a criminal defendant can show bad faith on the part of the [prosecution], failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58.

So, to prevail on his claim, Carroll must show: (1) that the state acted in bad faith by failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable

-10-

to obtain comparable evidence by other means. *Youngblood*, 488 U.S. at 57; *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996).

Carroll faces a formidable — even an insurmountable — task to show that the state knew that the interview notes, or a potentially recorded set of interviews, had value to the defense when the interviews were conducted before there were any charges filed. The Supreme Court has acknowledged that "[t]he presence or absence of bad faith by the [prosecution] for purposes of the Due Process Clause must necessarily turn on the [prosecution's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 57 n.*. "It is not enough that the [prosecution] knew that [the evidence] could be determinative of guilt or innocence if preserved or tested. . . . When the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established." *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002). The state court of appeals determined that neither the prosecution nor the police engaged in bad faith, and this Court agrees.

Nor has Carroll established prejudice. It is true that, "[t]o prevail on his *Brady* claim, [the petitioner] need not show that he 'more likely than not' would have been acquitted had the new evidence been admitted." *Wearry*, 136 S. Ct. at 1006 (quoting *Smith v. Cain*, 565 U.S. 73, 74-76 (2012)). "He must show only that the new evidence is sufficient to 'undermine confidence' in the verdict." *Ibid.* However, in the habeas context, "prejudice" takes on a different hue. *O'Hara v. Brigano*, 499 F.3d 492, 502-03 (6th Cir. 2007). "Prejudice means that the 'nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.'" *United States v. Castano*, 906 F.3d 458, 466 (6th Cir. 2018) (quoting *Strickler*, 527 U.S. at 281 (1999)). Prejudice might not result from the nondisclosure "if the State's other

-11-

evidence is strong enough to sustain confidence in the verdict." *Smith*, 565 U.S. at 76 (citing *United States v. Agurs*, 427 U.S. 97, 112-13 & n.21 (1976)). The Michigan Court of Appeals noted that all of the parties to the interviews testified at trial and that Detective Lamontaine completed his report the day after the interviews and that his report was most likely accurate. *Carroll*, 2013 WL 6124227 at *2. That statement was not correct: M.M.'s father, Robbie Probst, did not testify at trial. But that does not affect the merits of Carroll's *Brady* claim. And the state courts' ultimate conclusion does not amount to a misapplication of federal law.

The second part of Carroll's argument presents a different gloss on the proceedings as they involve the testimony of child-witnesses whose reliability might have been compromised by pretrial suggestions. In his post-conviction motion, he argued that each of the girls should have been disqualified as witnesses because there was no determination in advance that their testimony was reliable and not the result of implanted suggestions by family members and the police. He now contends that the Michigan Court of Appeals disregarded the evolving law on child interview techniques, ignored the fact that the girls' disclosures occurred during their mother's breakup with the petitioner, discounted the failure of the police to record the interviews, gave no weight to the delay between the girls' initial disclosures and the report to police, and found no fault with Robbie Probst's failure to testify at trial.

Carroll first raised such issues on collateral review and the state trial court denied relief finding that such matters (i.e., sufficiency of the evidence) were previously raised and addressed on direct appeal. *Carroll*, No. 11-38798-FC at *3-4, ECF No. 5-19, PageID.3-4. That is not correct. Although the court of appeals discussed the sufficiency of the evidence and held that the convictions were not against the great weight of the evidence, the question of the reliability of the

-12-

girls' testimony never was mentioned.  Because the state courts did not address the claim on the merits, AEDPA's deferential standard of review does not apply to this issue. *Williams v. Anderson*, 460 F.3d 789, 796 (6th Cir. 2006) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (holding that the "[AEDPA] by its own term is applicable only to habeas claims that were 'adjudicated on the merits in State court.'") (quoting 28 U.S.C. § 2254(d)).

Carroll has cited several state court cases from around the country that prescribe preferred interview techniques for child sexual abuse victims and criticize improper ones. *E.g. State v. Huss*, 506 N.W.2d 290 (Minn. 1993) (finding insufficient evidence where the child witness made insistent statements and criticizing the use of suggestive books and video, repetitive questioning, and mother's belief abuse occurred); *Felix v. State*, 849 P.2d 220, 228, 236, 243 (Nev. 1993) (assessing the reliability of a child witness's hearsay statements and requiring the court to determine reliability); *State v. Michaels*, 642 A.2d 1372, 1377-1380 (N.J. 1994) (requiring a pretrial hearing to determine the reliability of the testimony of a child who was subjected to suggestive interview techniques).

Although the petitioner characterizes these cases as examples of "evolving law," they are decades old.  Moreover, the cases do not establish a novel proposition.  Courts historically have recognized the need for preliminary determinations of reliability when a witness's memory may have been distorted by suggestive investigative techniques. *E.g.*, *United States v. Wade*, 388 U.S. 218 (1967) (eye witness subject to suggestive pretrial lineup); *Simmons v. United States*, 390 U.S. 377, 381 (1968) (same with suggestive photographic show up); *Rock v. Arkansas*, 483 U.S. 44, 61 (1987) (discussing hypnotically refreshed testimony).  But even where there is a danger of suggestibility, pretrial hearings generally are not required where no police conduct creates the

problem.  *See Sexton v. Beaudreaux*, --- U.S. ---, 138 S. Ct. 2555, 2559 (2018) (reiterating that due process concerns arise only when "law enforcement officers use[d] an identification procedure that is *both* suggestive and unnecessary") (quotation marks and citations omitted); *see also Perry v. New Hampshire*, 565 U.S. 228, 233 (2012) (holding that "[w]hen no improper law enforcement activity is involved . . . it suffices to test reliability through the rights and opportunities generally designed for that purpose," such as cross-examination, "protective rules of evidence," and jury instructions).

Although some of the state court cases Carroll mentioned discuss the reliability of a child witness in a sexual abuse case, the only Supreme Court case Carroll cites on the subject is *Idaho v. Wright*, 497 U.S. 805 (1990).  There, the Court reviewed an Idaho Supreme Court decision overturning a child sexual abuse conviction where a pediatrician testified about the child-victim's out-of-court statements describing the sexual contact.  The state court was critical of the physician's interview techniques and determined that they were suggestive, leading to the unreliability of the statement.  497 U.S. at 812-13 (noting that the interview was not recorded on videotape and the interviewer used leading questions).  The child herself did not testify at trial.

The United States Supreme Court affirmed on the basis that allowing that testimony under the state's hearsay rule's residual exception violated the Confrontation Clause.  However, the Court did not accept the state court's criticism of the interview techniques.  *Id.* at 818 ("Although we agree with the court below that the Confrontation Clause bars the admission of the younger daughter's hearsay statements, we reject the apparently dispositive weight placed by that court on the lack of procedural safeguards at the interview.").  In fact, *Wright* undercuts Carroll's argument that the Due Process Clause required a pretrial reliability hearing, employment of specific

interview protocols, or the testimony of persons who had questioned the children earlier.  *Ibid.*
("[W]e do not believe the Constitution imposes a fixed set of procedural prerequisites to the
admission of such statements at trial.").

It is true that Robbie Probst did not testify at trial.  But Carroll cites no Supreme Court

Carroll does not argue that he was deprived of rights under the Confrontation Clause, the
central issue in *Wright*.  The girls testified at trial and were subject to cross-examination about
their allegations, their disclosures to family, and their police interviews.  That satisfied the
Confrontation Clause.  *See Crawford v. Washington*, 541 U.S. 36, 54 (2004).

It is true that Robbie Probst did not testify at trial.  But Carroll cites no Supreme Court
precedent or other authority that required the prosecutor or the court to compel his testimony.
Michigan has a state law requiring that prosecutors produce "res gestae witnesses," *see* Mich.
Comp. Laws § 767.40a, but such a claim is outside the scope of federal habeas review.  *See, e.g.*,
*Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011) ("Michigan's requirement that prosecutors
produce res gestae witnesses is a matter of state law, and its enforcement is outside the scope of
our review. We have rejected on that basis claims raised under this very state requirement."); *see
also Grays v. Lafler*, 618 F. Supp. 2d 736, 745 (W.D. Mich. 2008) ("There is no clearly established
Supreme Court law recognizing a constitutional right to a res gestae witness.").

Carroll has not shown that the manner in which the state court reviewed the girls' testimony
trenched upon his federal constitutional rights.

## B.

Next, Carroll argues that he was denied a fair trial because the prosecutor elicited evidence
of other acts without furnishing proper notice.  He points to Amy Gaynier's testimony that Patricia
Probst (M.M.'s grandmother) said three years earlier that Carroll was touching the girls

inappropriately.  He raised these issues on direct appeal; the Michigan Court of Appeals considered them on plain error review and denied relief.  The court found that the prosecutor did not engage in misconduct and the trial court did not err because such evidence is admissible in child sexual abuse cases under Michigan law.   The court also observed that the record was unclear about when the defense received notice of the evidence, but he was aware of it from police reports received during discovery.  *Carroll*, 2013 WL 6124227 at *3-4.

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that the rule in *Donnelly* and *Darden* is the proper standard).  The state prosecutor's offer of other acts evidence did not amount to improper conduct where the state court on appeal held that the evidence was received properly.  Offering evidence that might be damaging to an accused's case is not unfair when the evidence is admissible.

The state court of appeals determined that the evidence was admitted properly, relying on a state evidence rule and a state statute.  Federal habeas courts will not second-guess rulings of that nature, because they "cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  Admission of evidence that a defendant committed a criminal act other than the charged offenses is not fundamentally unfair, particularly when it is not offered to prove the defendant's general bad character or propensity to commit the charged crime.

There is no suggestion that the state offered the evidence to prove Carroll's general bad character.  The prosecutor did not make a propensity argument.  But even if she had made such an argument, the Supreme Court has declined to hold that similar other-acts evidence is so extremely unfair that its admission violates fundamental conceptions of justice, *Dowling v. United States*, 493 U.S. 342, 352-53 (1990), although it has found "no question that propensity [by itself] would be an 'improper basis' for conviction," *Old Chief v. United States*, 519 U.S. 172, 182 (1997).  Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause.  *Id.* at 352.  Put more directly, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also* Fed. R. Evid. 413 and 414 (allowing such evidence in federal criminal trials involving sexual misconduct).

Moreover, Carroll had the opportunity to question all of the individuals involved, including Amy Gaynier, Patricia Probst, and the girls.  In fact, Amy Gaynier testified that when she confronted M.M. three years ago, the girl denied that Carroll had touched her inappropriately.  ECF No. 5-9, PageID.619-620.  Patricia Probst admitted that she did not contact the police at that time and only told them when they contacted her in 2011.  ECF No. 5-10, PageID.721-722.  And M.M. testified that she did not remember saying anything to Patricia Probst three years before trial.  *Id.* at PageID.805.  Carroll has not shown that admission of this evidence rendered his trial fundamentally unfair.

Habeas relief is not warranted on this claim.

-17-

C.

Carroll next asserts that the prosecution failed to present sufficient evidence to support his convictions. The Michigan Court of Appeals rejected this claim on direct appeal because it found that the testimony of M.M. and J.P. established all of the elements of the offenses of conviction. *Carroll*, 2013 WL 6124227 at *5-7.

It is well established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Under the Due Process Clause, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A federal court reviewing a state court conviction under the habeas corpus statute that is "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

On direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. That rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge

-18-

under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

To convict a person of first-degree criminal sexual conduct as charged in this case under Michigan law, the prosecutor must prove that the defendant was 17 years old or older and that he engaged in sexual penetration with a person under 13 years of age. Mich. Comp. Laws § 750.520b(1)(a) and (2)(b); *People v. Hammons*, 210 Mich. App. 554, 556-557, 534 N.W.2d 183, 184 (1995). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." Mich. Comp. Laws § 750.520a(r); *People v. Lockett*, 295 Mich. App. 165, 187, 814 N.W.2d 295, 307 (2012).

For second-degree criminal sexual conduct, the prosecutor had to prove that the defendant was 17 years old or older and that he engaged in sexual contact with a person under 13 years of age. Mich. Comp. Laws § 750.520c(1)(a) and (2)(b); *People v. Lemons*, 454 Mich. 234, 253, 562 N.W.2d 447, 456 (1997). "Sexual contact" is defined as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for: (i) Revenge. (ii) To inflict humiliation. (iii) Out of anger." Mich. Comp. Laws § 750.520a(q); *Lemons*, 454 Mich. at 253, 562 N.W.2d at 456. "Intimate parts" include "the primary

-19-

genital area, groin, inner thigh, buttock, or breast of a human being." Mich. Comp. Laws §
750.520a(f).

As relevant to this case, accosting a child for immoral purposes requires proof that the
defendant accosted, enticed or solicited a child under 16 years of age with the intent to induce or
force the child to commit or submit to an immoral act, an act of sexual intercourse or gross
indecency, or any other act of depravity or delinquency, or that he encouraged a child to engage in
any of those acts. Mich. Comp. Laws § 750.145a; *People v. Kowalski*, 489 Mich. 488, 498-499,
803 N.W.2d 200, 208 (2011).

Finally, to convict a person of aggravated indecent exposure, the prosecutor must prove
that the defendant knowingly made an open or indecent exposure of his person, Mich. Comp. Laws
§ 750.335a(1); *People v. Neal*, 266 Mich. App. 654, 663, 702 N.W.2d 696, 701 (2005), and that
he fondled his "genitals, pubic area, or buttocks." Mich. Comp. Laws § 750.335a(2)(b). "Indecent
exposure" is "the exhibition of those private parts of the person which instinctive modesty, human
decency or natural self-respect requires shall be customarily kept covered in the presence of
others." *People v. Huffman*, 266 Mich. App. 354, 369, 702 N.W.2d 621, 630 (2005). The exposure
of genitals to a child, even when done at home, constitutes indecent exposure. *Neal*, 266 Mich.
App. at 663-64, 702 N.W.2d at 702.

The state courts' determination that the girls' testimony sufficiently established all the
elements of the crimes tracked federal law. M.M. testified that the petitioner put his mouth on her
"boob," ECF No. 9-10, PageID.782-784, that he put his front private in her back private, *id.* at
PageID.785, 787, 818-819, that he put his tongue and mouth on her front private and back private,
that he stuck his front private in her front private, *id.* at PageID.789-791, that he stuck a sex toy in

-20-

her front private and it vibrated, *id.*, and that he tried sticking his finger in her front private, *id.* at PageID.792. J.P. testified that the petitioner licked her front and back privates, *id.* at PageID.832-833, that he told her to lick his private and to rub his private and she did so, *id.* at PageID.841-844, that he pushed his private into her mouth and that he touched her front private with his private and moved back and forth, *id.* at PageID.844-850, that he had her watch while he was rubbing his private and "clear stuff" came out, *id.* at PageID.850-851, and that he touched her front and back privates with his hand and that it hurt when he touched her front private with his finger, *id.* at PageID.851-853. That testimony provided sufficient evidence that Carroll committed two counts of first-degree criminal sexual conduct (one for each victim), two counts of second-degree criminal sexual conduct (one for each victim), one count of accosting a child for immoral purposes, and one count of aggravated indecent exposure. It is well-settled that a victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases).

Carroll disagrees, mainly challenging the credibility of the witnesses and the jury's evaluation of the evidence presented at trial. However, it is for the factfinder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Cavazos*, 565 U.S. at 7. The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Carrol committed two counts of first-degree criminal sexual conduct, two counts of second-degree criminal sexual conduct, one count of accosting a child for immoral purposes, and one count of aggravated indecent exposure. The jury's verdict was reasonable.

Lastly, Carroll challenges the Michigan Court of Appeals's interpretation of the state statute that defines "penetration" as including cunnilingus, pointing to M.M.'s testimony that

-21-

Carroll never penetrated her.  However, it is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).  State courts are the final arbiters of state law and federal courts will not intervene in such matters.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  Even if the state court of appeals construed the definitional sections of the criminal sexual misconduct statutes in a way that could be questioned, habeas relief does not lie for perceived errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Habeas relief is not warranted on this claim.

D.

Carroll also contends that the trial prosecutor engaged in another act of misconduct by shifting the burden of proof to him, indirectly commenting on his silence, and misstating the evidence, all during her closing argument.  He objects to the following argument:

> That is what the case is about. The case is certainly — also you can't deny the fact that in this case while we have two children who got up there and testified, we've got a bunch of adults who are challenging perhaps at the best who have their own issues.  Who — none of whom — you hear nothing about negative blood between Robbie Probst and Dwain Carroll, and Robbie Probst isn't here, you know that.

ECF No. 5-11, PageID.1077.

The Michigan Court of Appeals rejected this claim on direct appeal because it believed that the argument did not shift the burden of proof or comment on Carroll's silence.  The court acknowledged that the prosecutor misstated the evidence because Amy Gaynier testified that Robbie Probst and Carroll had a troubled relationship.  The court, however, concluded that reversal was not required because any prejudice to the petitioner was alleviated by the trial court's

-22-

instructions that the attorneys' arguments are not evidence and should not be considered as such. *Carroll*, 2013 WL 6124227 at *9-10.

As noted earlier, a prosecutor's misconduct will require habeas corpus relief when the conduct complained of "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker*, 567 U.S. at 45 (2012) (citing *Darden*, 477 U.S. at 181 and calling *Darden* the "clearly established Federal law" on the issue). *Parker* notes that "the *Darden* standard is a very general one," which permits state courts "more leeway . . . in reaching outcomes in case-by-case determinations[.]" *Id.* at 48 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). On habeas review, the AEDPA raises the bar even higher than the "high standard" set by *Darden*. *Halvorsen v. White*, 746 F. App'x 489, 499 (6th Cir. 2018) (citing *Parker*, 567 U.S. at 48). To obtain habeas relief, "[t]he misconduct must so clearly violate *Darden* that the state court's failure to identify it was not just erroneous, but 'objectively unreasonable.'" *Id.* at 497 (citing *Williams*, 529 U.S. at 409). *Darden* itself did not find unconstitutional a prosecutor's characterization of the defendant as an "animal" or his expressed wish that he "could see [the defendant] with no face, blown away by a shotgun." *Darden*, 477 U.S. at 180, nn.11, 12. Even where prosecutors' statements are so extreme as to be "universally condemned," the inquiry remains whether due process was denied. *Id.* at 181.

It is true that a prosecutor may not employ an argument that shifts the burden of proof to a defendant, *Patterson v. New York*, 432 U.S. 197, 215 (1977), or imply that the defendant is required to provide evidence to prove his or her innocence, *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006). But here, the prosecutor did neither. She did not attempt to shift the burden of proof, and she did comment on Carroll's silence. Instead, the prosecutor attempted to argue from the

-23-

evidence, or lack thereof, that the defense was not worthy of belief.  "[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence."  *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). Prosecutors can also point out the lack of evidence supporting the defense theory without implying that the defendant should testify to furnish the missing evidence.  *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).  Such was the case here.

A prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence.  *Donnelly*, 416 U.S. at 646; *Darden*, 477 U.S. at 182; *Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005).  The prosecutor's argument in this case about the lack of bad blood between Carroll and Robbie Probst was a misstatement of the evidence: Amy Gaynier testified that Carroll and Robbie had "some issues," although not initially, and that "they have them now."  ECF No. 5-9, PageID.627-628.  Although the prosecutor's misstatement of the evidence was improper, the state court's conclusion that any resulting prejudice was alleviated by the jury instructions was not unreasonable.  The remark was isolated and concerned impeachment evidence.  The trial court properly instructed the jury on the presumption of innocence, the burden of proof, and the petitioner's right to remain silent, and also explained that the attorneys' statements and arguments are not evidence and that the jurors should only accept their representations that were supported by the evidence.  ECF No. 5-11, PageID.1107-1108.  Jurors are presumed to follow the court's instructions.  *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").  The state court reasonably

concluded that nothing in the prosecutor's argument rendered the trial fundamentally unfair. Habeas relief is not warranted on this claim.

E.

Carroll argues that Suzanne Strack's conduct during trial while J.P. was testifying amounted to witness tampering that violated his rights under the Due Process Clause. Strack was called out by defense counsel for nodding her head and using other movements to coach J.P. about how to answer as she testified. With his post-conviction motion in which he first raised this issue, he filed affidavits from two spectators and one juror (all signed in 2015) who stated that they observed that behavior. *See* ECF No. 5-15, PageID.1239-1244.

The state court motion judge — a different judicial officer than presided over the trial — deferred to the trial judge's finding that no coaching occurred. The motion judge found that the trial judge was made aware of the situation during trial, had the best vantage point to observe what was happening, paid attention to the matter, and concluded that he did not see any women coaching J.P. although they sometimes smiled or "maybe once or twice somebody nodded a head or something." The motion judge also rejected the juror's affidavit as an attempt to impeach the jury's verdict. *Carroll*, No. 11-38798-FC at *4-6, ECF No. 5-19, PageID.1282-1284.

Carroll has not cited a Supreme Court case that addresses this issue or one close to it. It easily follows that the state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The state court's factual findings are presumed correct on habeas review, and Carroll has not rebutted this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The record reveals that defense counsel noticed J.P. looking at Suzanne Strack ("Aunt Sue") while he was asking J.P. questions about Aunt Sue

-25-

and asked J.P. if she was looking to get answers from her.  J.P. replied, "no."  ECF No. 5-10, PageID.857-858.  The record confirms that the trial judge was aware of the witness tampering concern at that time, that he observed the situation while J.P. was testifying, and that he did not believe that Suzanne Strack (or anyone else) was signaling J.P. about how to testify.  ECF No. 5-11. PageID.935-938.  As the motion judge concluded, the trial judge was in the best position to observe the disputed behavior at the time of trial and the affidavits of the spectators and the juror, signed four years after trial, are less reliable.  Carroll has not established on this record that Suzanne Strack (or anyone else) coached J.P. or tampered with her testimony.  Habeas relief is not warranted on this claim.

F.

Next, Carroll contends that his right to a fair jury was impaired when one juror threatened another juror.  He first raised that argument on collateral review, apparently during oral argument and not in a written brief.  ECF No. 5-18, PageID.1267-1270.  He had filed an affidavit by one juror (signed in 2015) in which the juror stated that another juror threatened him by stating "we know where you live" while they were entering the jury room during deliberations.  The juror stated that after the threat and pressure from other jurors, he agreed to convict on some counts. ECF No. 5-15, PageID.1240.  The trial court denied relief, explaining that jurors are not allowed to impeach their own verdicts and found that the petitioner did not plead that the jurors were influenced improperly by extraneous information or an outside influence.  *Carroll*, No. 11-38798-FC at 5-6, ECF No. 519, PageID.1284.

The Sixth Amendment guarantees a criminal defendant a fair trial by a panel of impartial jurors.  *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *see also DeLisle v. Rivers*, 161 F.3d 370, 382

-26-

(6th Cir. 1998) (citing *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).  Jurors, however, are presumed to be impartial, *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006) (citing *Irvin*, 366 U.S. at 723), and "due process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . .  Due process means a jury capable and willing to decide the case solely on the evidence before it. . . ," *Smith*, 455 U.S. at 217.  The habeas petitioner bears the burden of proving jury bias.  *United States v. Wheaton*, 517 F.3d 350. 362 (6th Cir. 2008).

A criminal defendant who alleges juror bias is entitled to a hearing in which he or she has "the opportunity to prove actual bias."  *Smith*, 455 U.S. at 215; *see also Remmer v. United States*, 347 U.S. 227, 229-30 (1954).  But to be entitled to such a hearing, a defendant must do more than simply raise the possibility of bias.  *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998).  A defendant must raise a "colorable claim of extraneous influence" to warrant a hearing into possible jury bias.  *United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999); *see also Ewing v. Horton*, 914 F.3d 1027, 1030 (6th Cir. 2019) (quoting *Davis*).  An "extraneous influence" is "one derived from specific knowledge about or a relationship with either the parties or their witnesses." *Herndon*, 156 F.3d at 636.   Reviewing courts have recognized that the trial court is in the best position to determine the nature and extent of alleged jury misconduct, as well as the appropriate remedy for any demonstrated misconduct.  *See United States v. Gaitan-Acevedo*, 148 F.3d 577, 590 (6th Cir. 1998) (citing *United States v. Copeland*, 51 F.3d 611, 613 (6th Cir. 1995)).

The state court's denial of relief does not contravene or unreasonably apply Supreme Court precedent.  Carroll has not alleged any extraneous or external influence on the jury.  The juror's affidavit only recites an act of intimidation of one juror by another juror.  That at most can be characterized as an internal influence on the juror during the private jury deliberations.

The Supreme Court has taken a hands-off approach to judicial efforts to examine a jury's internal processes and deliberations, holding that such information is inadmissible to impeach a verdict; only extraneous influences may be examined. *Tanner v. United States*, 483 U.S. 107, 117-18 (1987); *Smith v. Nagy*, 962 F.3d 192, 199-201 (6th Cir. 2020) (discussing the relationship between *Remmer*, *Tanner*, and the no-impeachment rule and stating that the distinction between external and internal influences is "critical"); *see also* Fed. R. Evid. 606(b); Mich. R. Evid. 606(b); *People v. Budzyn*, 456 Mich. 77, 566 N.W.2d 229, 236 (1997) ("[O]ral testimony or affidavits may only be received on extraneous or outside errors, such as undue influence by outside parties."). That is not to say that internal influences will not infect deliberations. But as the *Tanner* Court explained:

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. . . . Moreover, a full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of lay people would all be undermined by a barrage of postverdict scrutiny of juror conduct.

483 U.S. at 120-21 (internal citations omitted).

Carroll argues, however, that the affidavit actually does mention an external source: he says that "we" refers to someone who was not a juror. But that pronoun just as likely could refer to the other jurors, or it could have been used generically. The affidavit can be read as nothing more than a complaint by a juror about feeling coerced or pressured by the other jurors into rendering a verdict. That is the type of case that does not warrant an evidentiary hearing; the jury's internal deliberations are not subject to review. *Id.* at 117-122.

-28-

The Supreme Court has not addressed whether a threat by one juror to another juror qualifies as an exception to the no-impeachment rule.  The novelty of the claim, therefore, dooms it.  *See Aceval*, 671 F. App'x at 369; *Coleman*, 804 F.3d at 818-819; *Miskel*, 397 F.3d at 453.

A final comment worth noting is that the juror's affidavit is not particularly credible, since it was signed four years after trial, does not identify the offending juror in any detail, and conflicts with his affirmation of the verdict when the jury was polled.  ECF No. 5-12, PageID.1155 (Juror Lake).

The trial court's decision was reasonable.  Habeas relief is not warranted on this claim.

G.

Carroll argues that he was denied the effective assistance of trial and appellate counsel, advancing several complaints about his attorneys' performance.  Some the bases for this argument were raised on direct appeal and others in the post-conviction motion.  With the motion, Carroll filed an affidavit by William Hackett, his trial attorney, commenting — sometimes critically — on his own performance.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  An ineffective assistance of counsel claim has two components.  A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness."  *Id*. at 688.  The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."

-29-

*Id*. at 689.   The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.   Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)).   And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted).   This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).   "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

-30-

1.

One basis for this argument, raised on direct appeal, is the complaint that trial counsel did not object to Detective Lamontaine's failure to record the girls' interviews, his destruction of his interview notes, and the admission of his report.  The Michigan Court of Appeals held that counsel's performance was not deficient because counsel made a successful objection when Detective Lamontaine was testifying, impeached the credibility of his police report during cross-examination, questioned him extensively about his interview techniques and mistakes that were made during the interviews, and questioned him about his failure to record the interviews and his destruction of his notes.  The court also noted that counsel was not obligated to make futile objections, and even if the objections were made (and likely overruled), the outcome of trial would not have been different.  *Carroll*, 2013 WL 6124227 at *5.

That decision faithfully applied the governing federal law.  The record shows that trial counsel made relevant objections when Detective Lamontaine testified and cross-examined him about his report, his interview techniques, his failure to record the interviews, the destruction of his notes, the searches, and his investigation.  ECF No. 5-9, PageID.546, 571-589.  Carroll argues that counsel should have raised more objections, but he cannot say that those objections would have been sustained.  Trial counsel's performance interrogating Detective Lamontaine subjected the state's witness to meaningful adversarial testing.  And, as the state court of appeals noted, trial counsel was not required to make futile or meritless arguments.  *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010).

2.

Carroll asserts that trial counsel was ineffective by not objecting to the admission of the other acts evidence.  The Michigan Court of Appeals rejected that claim on direct appeal because it determined that the evidence was admissible.  *Carroll*, 2013 WL 6124227 at *5.  The failure to object to admissible evidence does not amount to performance that falls "below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  The state court accurately applied *Strickand* when it came to that result.  *Tackett*, 956 F.3d at 375; *Hoffner*, 622 F.3d at 499.

3.

Carroll also contends that trial counsel was ineffective by not objecting to the prosecutor's actions that he believed amounted to misconduct.  Those instances, discussed above, were offering prior acts evidence and the statements she made during closing argument.  The Michigan Court of Appeals found no misconduct by the prosecutor's offer of the evidence or her argument, save her misstatement about Carroll's relationship with Probst.  It also found that the failure to object to the prosecutor's misstatement of the facts was not prejudicial due to the trial court's instructions.  *Carroll*, 2013 WL 6124227 at *10-11.

The decision likewise properly applied *Strickland*.  Because the prosecutorial misconduct claims either lack merit or did not result in prejudice or render the trial fundamentally unfair, Carroll cannot establish that counsel performed defectively or that his performance caused prejudice, as the federal cases define it.

4.

The petitioner also asserts that trial counsel was ineffective for failing to move to suppress or strike the girls' testimony as unreliable, or at least seek a pretrial hearing on suggestibility or

-32-

move for a new trial.  Carroll first raised this issue in his post-conviction motion and the trial court denied relief because Carroll previously raised the issue of ineffective assistance of counsel on direct appeal and was denied relief and had not shown a retroactive change in the law.  *Carroll*, No. 11-38798-FC at *3-4, ECF No. 5-19, PageID.1281-1282.

The state courts did not address this aspect of Carroll's ineffective-assistance-of-counsel claim, and there is no state court ruling to consider.  For that reason, AEDPA's deferential standard of review does not apply to this issue.  *Williams*, 460 F.3d at 796; *Maples*, 340 F.3d at 436 (confining AEDPA's deferential review standard to "habeas claims that were 'adjudicated on the merits in State court.'") (quoting 28 U.S.C. § 2254(d)).  The deference to counsel's performance mandated by *Strickland*, however, still applies.

As noted earlier in this opinion, there are established procedures for challenging pretrial evidence that may be unreliable.  But those procedures have developed historically for eyewitness testimony.  *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  It is clearly established that a conviction based on identification testimony following a pre-trial identification violates due process when the pre-trial procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons*, 390 U.S. at 384.  If a witness is exposed to an unduly suggestive pre-trial identification procedure, the witness's in-court identification must be suppressed unless the identification has an independent origin untainted by the suggestive pre-trial procedure.  *Wade*, 388 U.S. at 241.

Michigan criminal defense attorneys are familiar with these principles, and the practice of moving for a so-called *Wade* hearing is a common one, which trial courts will conduct when a defendant makes a preliminary showing that a pretrial identification procedure is "so suggestive

in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *E.g.*, *People v. Howard*, No. 322868, 2015 WL 7283436, at *6 (Mich. Ct. App. Nov. 17, 2015) (quoting *People v. Kurylczyk*, 443 Mich. 289, 302-03, 505 N.W.2d 528, 534 (1993) (quoting *Neil v. Biggers*, 409 U.S. 188, 196 (1972))).   The Sixth Circuit has recognized that the failure to move for a *Wade* hearing can amount to deficient performance by defense counsel under certain circumstances.   *Howard v. Bouchard*, 405 F.3d 459, 480-81 (6th Cir. 2005).   !

However, there is no analogous procedure for a pretrial challenge to the testimony of child sexual abuse victims recognized by Michigan courts.  That is not to say that a hearing of that nature might not be a good idea in some cases.  But Carroll faces a formidable obstacle to show that the failure of his lawyer to ask for a type of pretrial hearing that had not been recognized in the state's criminal jurisprudence was unreasonable "under prevailing professional norms."  *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688).   It must be remembered that *Strickland* requires a reviewing court to presume that defense counsel's conduct was not the product of deficient performance.  *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) ("To counteract the natural tendency to fault an unsuccessful defense, a court reviewing an ineffective assistance of counsel claim must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'") (quoting *Strickland*, 466 U.S. at 689).

Moreover, Carroll's trial counsel's choice of a different strategy cannot be deemed deficient performance.  The record reveals that trial counsel challenged the girls' version of events at trial through cross-examination of the girls, ECF No. 5-10, PageID.799-819, 854-864, 873-874, as well as the other prosecution witnesses, ECF No. 5-9, PageID.571-589, 624-643; ECF No. 5-10, PageID.698-709, 725-730, 742-746, 755-771, presented an expert witness to critique the

-34-

interview protocols and discuss reliability concerns, ECF No. 5-11, PageID.953-1000, argued during closing argument that the allegations were not worthy of belief, ECF No. 5-11, PageID.1079-1097, was able to persuade the prosecutor to dismiss several counts, and successfully moved for a directed verdict on certain counts, ECF No. 5-10, PageID.880-894.  The lack of complete success of that strategy does not mean that he was ineffective.  *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002).  "Where two reasonable but divergent paths are presented, reviewing courts studiously avoid second-guessing counsel's choices."  *Parker v. Berghuis*, No. 15-11842, 2018 WL 3659547, at *7 (E.D. Mich. Aug. 2, 2018).  One cannot fault trial counsel for choosing a more traditional method of attacking the girls' credibility.

Habeas relief is not warranted on this claim.

5.

Carroll criticizes his trial lawyer for not pressing hard enough to locate and present Robbie Probst as a witness at trial.  That issue was raised for the first time in the post-conviction motion, and the trial court denied relief because he previously raised the issue of ineffective assistance of counsel on direct appeal and was denied relief and had not shown a retroactive change in the law. *Carroll*, No. 11-38798-FC at *3-4, ECF No. 5-19, PageID.1281-1282.  Again, because state courts did not address the merits of this argument, AEDPA deference is not afforded; only *Strickland* deference applies.  *Williams*, 460 F.3d at 796; *Maples*, 340 F.3d at 436.

Federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007).  The duty to investigate "includes the obligation to investigate all witnesses

who may have information concerning . . . guilt or innocence." *Towns v Smith*, 395 F.3d 251, 258 (6th Cir. 2005). On the other hand, decisions about what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Carroll has not shown that his lawyer was ineffective by failing to secure Robbie Probst as a witness. The record shows that counsel was clearly aware of Robbie Probst and his potential testimony. Counsel asked the prosecutor to search for Robbie when he did not appear for the second day of trial, but he subsequently agreed that such efforts could stop when it became obvious that the police could not find him. ECF No. 5-16, PageID.1252. The record indicates that counsel asked for a continuance to give the police time to find Robbie Probst and requested a missing witness instruction. ECF No. 5-11, PageID.928-934. When the police were unsuccessful in locating him near the close of trial, counsel agreed to forego the missing witness instruction because it would have required a due diligence hearing. Instead, he requested that he be allowed to argue Robbie's failure to appear warranted an inference that was adverse to the state's case. Counsel followed through, discussing Robbie's failure to appear in closing arguments. *Id*. at PageID.1085, 1094. Trial counsel's conduct was reasonable under the circumstances and sound trial strategy. Again, the fact that counsel's strategy was ultimately unsuccessful does not mean that he was ineffective. *Moss*, 286 F.3d at 859.

And even if it could be said that counsel erred, Carroll has not shown prejudice.  He has not furnished any evidence, for example, that Probst's testimony would have revealed some irregularity with the girls' initial disclosure of the sexual abuse.  And it may have reinforced the validity of those disclosures.  A speculative argument with no backup evidence is not sufficient to warrant habeas relief.  *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012); *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006).

6.

The next basis for Carroll's ineffective assistance claim is trial counsel's stipulation to let Count 13 (renumbered as Count 10), first-degree criminal sexual conduct on M.M., go to the jury. Carroll says that there was insufficient evidence to support it.  This claim was raised first in the post-conviction motion, and the trial court rejected it without discussing the merits.  *Carroll*, No. 11-38798-FC at *3-4, ECF No. 5-19, PageID.1281-1282.  AEDPA deference does not apply here.

Count 13/10 required proof of sexual penetration, and the state proposed to prove that element by showing an act of cunnilingus.  And under Michigan law, sexual penetration is defined as "sexual intercourse, *cunnilingus*, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ."  Mich. Comp. Laws § 750.520a(r) (emphasis added); *Lockett*, 295 Mich. App. at 187, 814 N.W.2d at 307 (2012).  At trial, M.M. testified that the petitioner put his front private in her back private, ECF No. 5-10, PageID.785-787, 818-819, that he put his tongue or mouth on her front private and back private, that he stuck his front private in her front private (although she said it did not really go in), and that he stuck a sex toy up her private, *id*. at PageID.789-791.  That

-37-

evidence was more than sufficient to proceed on the first-degree criminal sexual conduct count as to M.M. especially since the statute defines cunnilingus as sexual penetration and that any other intrusion need only be "slight."  Defense counsel did not perform deficiently by agreeing that the jury could consider that charge.

Also, Carroll's showing of prejudice on this issue is wanting.  The Michigan Court of Appeals and this Court have determined that there was sufficient evidence to support his conviction on this count.  A directed verdict motion would have been futile.  As discussed, trial counsel cannot be deemed ineffective for failing to make a futile or meritless argument.  *Tackett*, 956 F.3d at 375; *Hoffner*, 622 F.3d at 499.  Habeas relief is not warranted on this claim.

7.

Carroll also faults trial counsel for not objecting or moving for a mistrial based on the alleged coaching of J.P. while she testified.  This issue likewise first came up on collateral review and the trial court denied relief because he previously raised the issue of ineffective assistance of counsel on direct appeal and was denied relief and had not shown a retroactive change in the law. The trial court also found that the underlying coaching claim lacked merit.  *Carroll*, No. 11-38798-FC at *3-6, ECF No. 5-19, PageID.1281-1284.  That latter finding essentially rejected the prejudice component of this part of the ineffective assistance claim, and it is entitled to AEDPA deference.

The court's determination reasonably applied federal law.  The record shows that counsel noticed J.P. looking at her Aunt Sue during the questioning and asked the witness if she was looking at her aunt for answers.  J.P. replied "no."  ECF No. 5-10, PageID.935-938.  Trial counsel attested that he also moved to block J.P.'s view of her Aunt Sue, ECF No. 5-16, PageID.1252. The record shows that counsel brought the matter to the court's attention again, the parties

-38-

discussed the issue, and the court found that no coaching or tampering had occurred.  ECF No. 5-11, PageID.935-938.  Counsel's conduct was reasonable.  And in light of the triaal court's finding, it was also reasonable for counsel not to seek a mistrial.  Counsel performed well within professional norms, and Carroll cannot say that if his lawyer had chosen another path, "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

8.

Carroll argues that the prosecutor committed misconduct by attempting to lead J.P. into saying "in" instead of "on" when describing cunnilingus and then using "in" during closing argument, and by instructing the police not to record the girls' interviews, and that trial counsel was ineffective for failing to object to that conduct.  These arguments were raised first in the post-conviction motion, and the trial court ruled that the prosecutorial misconduct claims lacked merit and that the petitioner failed to establish cause for not raising them previously (thereby implying that counsel was not ineffective), and the court also denied relief on the ineffective assistance of counsel claim because Carroll had raised the issue of ineffective assistance of counsel on direct appeal, was denied relief, and had not shown a retroactive change in the law.  *Carroll*, No. 11-38798-FC at *3-4, 6-7, ECF No. 5-19, PageID.1281-1282, 1284-1285.

Those rulings are neither contrary to Supreme Court precedent, an unreasonable application of federal law, nor an unreasonable determination of the facts.  The prosecutor's questioning technique did not "infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly*, 416 U.S. at 643.  A prosecutor can frame questions as she chooses within the bounds of the rules of evidence, and J.P. was allowed to answer and generally used the term "on."  Even assuming that the prosecutor misstated the evidence when she used the

-39-

term "in" during closing argument, ECF No. 5-11, PageID.1076, Carroll can show no prejudice by the misstatement. As previously discussed, cunnilingus is defined as sexual penetration under Michigan law, Mich. Comp. Laws § 750.520a(r), and any distinction between "on" or "in" is irrelevant for the first-degree criminal sexual conduct conviction. Moreover, the trial court's instructions alleviated any potential prejudice. The trial court properly instructed the jury that the attorneys' statements and arguments are not evidence and that the jurors should only accept the things that they say that are supported by the evidence. ECF No. 5-11, PageID.1107-1108.

Carroll also has not shown that the prosecutor committed misconduct by instructing Detective Lamontaine not to record the girls' interviews. Lamontaine's trial testimony on the issue is less than clear that the prosecutor gave such an instruction, and he also testified that he did not record the interviews because the equipment was antiquated and not operational. ECF No. 5-9, PageID.584-585, 595. Carroll has procured an affidavit suggesting that the latter excuse may not have been true, but that has no bearing on the prosecutor's conduct. And Carroll has not cited any Supreme Court precedent or other legal authority that requires that the police or prosecutor record interviews in order to satisfy due process.

The related ineffective-assistance-of-counsel claim fails for similar reasons. Counsel's performance cannot be deemed defective by not objecting or challenging prosecutorial conduct that the court found to be proper. *Tackett*, 956 F.3d at 375; *Hoffner*, 622 F.3d at 499. The petitioner has not established that his trial counsel was ineffective. Habeas relief is not warranted on this claim.

-40-

9.

Also in his post-conviction motion, and here, Carroll faults trial counsel for not objecting to leading questions, not calling a trauma expert (to refute medical testimony that cunnilingus can occur and leave a hymen intact), and not objecting to one of J.P.'s drawings (as being professionally drawn).   The trial court denied relief because Carroll challenged counsel's performance on direct appeal and did not include this basis.  *Carroll*, No. 11-38798-FC at *3-4, ECF No. 5-19, PageID.1281-1282.   Because the merits of the claim were not adjudicated, no AEDPA deference is afforded, but *Strickland* deference is.

Carroll' argument here is not well developed.   As to leading questions, he cites four transcript pages, but he does not explain which questions were improper.   Moreover, one of the cited pages shows that counsel, in fact, objected to a leading question. ECF No. 5-10, PageID.849. Carroll also fails to show that an objection, if made, would have been granted, and he does not explain how he was prejudiced by such a limited use of allegedly leading questions.   He is not entitled to relief on the basis of this argument.

Nor does Carroll provide any evidence to support his other arguments.   His allegation that a trauma expert would have testified in a manner beneficial to the defense and his allegation that J.P. did not draw a certain picture of fellatio are not backed up with any expert affidavit or other evidence to support his assertions.   Conclusory allegations are insufficient to warrant habeas relief. *Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d at 335-36; *Washington*, 455 F.3d at 733.

10.

-41-

Carroll also contends that he received ineffective assistance of appellate counsel.  He raised the issue of ineffective assistance of his first appellate counsel in a supplemental brief on direct appeal.  The Michigan Court of Appeals denied relief concluding that he failed to establish that his first appellate lawyer was ineffective.  *Carroll*, 2013 WL 6122247 at *15.  He raised the issue of ineffective assistance of his second appellate counsel on collateral review in the state trial court. The court denied relief concluding that Carroll failed to establish that appellate counsel was ineffective.  *Carroll*, No. 11-38798-FC at *6-7, ECF No. 5-19, PageID.1284-1285.

Carroll argues here that his appellate attorneys were ineffective by failing to raise the claims that he raised in his post-conviction motion and his *pro se* brief on direct appeal.  Claims of ineffective assistance of appellate counsel are evaluated under the same standard that applies to trial counsel.  *Richardson v. Palmer*, 941 F.3d 838, 858 (6th Cir. 2019) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).  That means that the "doubly deferential" standard described above (combining AEDPA and *Strickland*'s two-part test) governs this issue.  *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th Cir. 2017).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

-42-

The state courts' denials of relief on this claim are neither contrary to Supreme Court precedent nor unreasonable applications of federal law.  Carroll has not shown that his appellate lawyers' omissions of the claims presented in his motion for relief from judgment and his *pro se* briefs fell outside the wide range of professionally competent assistance.  None of the claims subsequently raised by the petitioner are "dead-bang winners," as evidenced by the state courts' denials of relief on those claims.  And even if the appellate lawyers erred in some fashion, Carroll cannot show that he was prejudiced by their conduct because the underlying claims lack merit. Appellate counsel cannot be deemed ineffective by failing to raise issues that lack merit.  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Habeas relief is not warranted on this claim.

## H.

Carroll says that he is entitled to habeas corpus relief because the cumulative effect of the alleged errors at trial rendered his trial unfair.  The state court rejected that argument on collateral review.  *Carroll*, No. 11-38798-FC at *7, ECF No. 5-19, PageID.1285.

Under AEDPA, that argument cannot succeed because the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *see Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *see also Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) (ruling that a cumulative error claim was not cognizable) (citing *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010)).

Habeas relief is not warranted on this claim.

-43-

*I.*

Lastly, Carroll argues that he is entitled to habeas relief because the state trial court did not grant an evidentiary hearing on the claims he raised on collateral review.  The contention that the state courts did not follow their own rules for addressing a claim will not support a request for federal habeas relief.  *Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) ("Whether or not the Michigan courts complied with the procedural requirements of Michigan law is not a matter for this court to decide on a petition for habeas corpus relief." (citing *Baze v. Parker*, 371 F.3d 310, 322-23 (6th Cir. 2004)).  There is no clearly-established Supreme Court law that recognizes a constitutional right to an evidentiary hearing on state post-conviction review.  *Hayes*, 193 F. App'x at 584; *Hall v. Berghuis*, No. 07-12163, 2009 WL 2244793, *9 (E.D. Mich. July 27, 2009) (same).  Habeas relief is not warranted on this claim.

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).  The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  October 18, 2021

-44-